We have four arguments this morning, and the first is number 18-2073, Slot Speaker Technologies against Apple. Thank you, Your Honor. May it please the Court. There are two claim terms at issue in this appeal. Sound-reflecting surface is in both patents. Straight path is just in the 340 patent. Let me address sound-reflecting surface first. The parties agreed on a construction, a non-resonant surface with low sound absorption, not made of sound-damping material. The Court, in further considering the construction, excised the word non-resonant from that construction and provided a definition that is inconsistent with claim language. The rest of the construction, the specification and expert testimony— But, to state, I think, what is the obvious, but consistent with the explanation you provided in your opening Markman brief about what non-resonant meant. That might not be enough, but he did take that language from your explanation, right? That is what the Court said, but that is incorrect, Your Honor. When the Court said that SST defined non-resonant as avoiding materials that would resonate at audible frequencies, the Court didn't consider the entirety of what Slot Speaker said in the same sentence. What SST said in its claim construction brief is that it would avoid materials that would resonate at audible frequencies and thereby dissipate sound energy instead of reflecting it as a panel resonator. And what Slot Speaker was saying there was comparing the sound-reflecting material and the quality of the sound-reflecting material with a material that would absorb sound waves. I hear you for the second phrase of that sentence that you've just read to us. Well, what about the first phrase where it says it would avoid materials that would resonate at audible frequencies? You're saying that that has a different meaning when it has the thereby clause following it? Yes, when read in context, because what that phrase is doing is comparing resonance with dissipation of sound energy, and that's entirely consistent with what the specification does when it discusses sound-reflecting materials and contrasts them with sound-absorbing materials. The experts were clear, the specification is clear, there is a spectrum in materials, sound-reflecting materials and sound-absorbing materials, and they have qualities, they have properties of sound reflection or sound absorption. But as the experts agreed, no material is perfect. No material has perfect sound reflection. No material has perfect sound absorption. So in explaining in its claim construction brief that it would avoid materials that would resonate and thereby dissipate sound energy. Is there any testimony or evidence that alleges that there's always got to be some amount of resonance at audible frequencies? No matter how you design the surface, no matter how thick it is, what materials you use, there's always, always, always, as a matter of science, going to be some amount of resonance at audible frequencies. Well, both Apple's expert and SST's expert agreed that no material is perfectly sound-reflecting or has perfect non-resonance. All right, but that leaves room for the possibility that whatever minor amount of resonance that could exist for any kind of surface, that could occur at inaudible frequencies rather than audible frequencies. If we go back to the claim language, the claims are directed to a narrow profile ground plane audio speaker system. So we have to look at the claims in that context. You have a sound-reflecting surface in the context of an audio speaker system. What I'm trying to figure out is you're trying to use some kind of principle. You rely on power integrations for the idea that we have to understand how one of ordinary skill in the art would look at these words. And so even if it says non-varying or even though it says non-resonant, well, we engineers would understand that there's always going to be a tiny bit of resonance, even if we refer to something as being non-resonant. And so now I'm trying to figure out, well, it appears to me that there's room in this record for, that there isn't an actual dispute between the experts as to whether any tiny amount of resonance has to occur in the audible frequency range. And that I didn't see in the record. What I saw from your expert were these broader notions that, well, what is going on with Apple's products isn't significant resonance. And so therefore it's non-resonant. And that's different to me than actually joining this very particular question that I'm concerned about, which is whether you have something in the record that says no matter how you design a particular reflecting surface, it's always got to have at least some amount of resonance within the audible frequency range. And so I don't see that in the record. If you point it to me, that would be helpful. Well, let me explain two particular points. One is let's go to the specification and how the specification describes these materials. The specification describes examples of the materials. And the specification also says that the sound reflecting surface is substantially non-resonant and that it's helpful in propagating acoustic waves generated by speakers while minimizing losses due to absorption. So the specification itself recognizes that there will not be perfect non-resonance in the context of the invention that's disclosed and claimed. I guess I was concerned about your reliance on the specification's description of a preferred embodiment being substantially non-resonant. And now you want us to convert the agreed-upon claim construction of non-resonant to mean substantially non-resonant. And that's not what was agreed upon for being the actual construction of the claim. It's like if the specification said, you know, preferably the door is substantially closed. And then the claim says the door is closed. I don't think you get to rewrite the claim to read the door is closed to now be the door is merely substantially closed just because the specification says the term substantially closed. Well, Your Honor, here we're not even dealing with a claim term. The claim term is sound reflecting surface. What we're discussing is how to interpret a construction of that where the construction that was offered talked about non-resonance on the one hand and the properties of that. Well, that's the thing that's peculiar to me about this case is that you're forcing the district court to construe a construction that was agreed upon by the parties. If you were pressing an interpretation of the claim term into some kind of workable plain language that can be understood and applied potentially by a jury, and then you say, well, there's actually more technical interpreting that's got to go on beyond the actual words that you agreed upon, it feels like a shift in the argument. You're going from X to Y to Z, and it's a little bit confusing on whether you should be allowed to do that. Well, Your Honor, this issue came up during the summary judgment hearing, and the judge suggested that there might be confusion on non-resonant. In slot speaker's view, there is no further construction that was absolutely mandated. The construction was non-resonant surface with low sound absorption. Low sound absorption does not mean no sound absorption. And by taking out the word non-resonant and reconstruing it to say that it does not resonate at audible frequencies, the court has a new construction that is inconsistent with the old construction. The old construction, the original construction that we believe was clear and a jury could understand, the experts had no difficulty understanding it and applying it, said low sound absorption. Low doesn't mean no. And the new construction that the court— It doesn't non-mean no? Not in the context of non-resonant with low sound absorption. Not in the context of the experts agreeing that every material has some resonance. Not in the context of a specification that says that the materials are substantially non-resonant in nature. Does every material, regardless of the materials used, the thickness of it, the design, always have to have a resonance that causes a two decibel level change that's audibly detectable? Not necessarily, but that isn't the question. Well, why wouldn't it be if in this particular case, you know, there's no dispute that Apple's phones with their metal plate is causing a two decibel level difference in the audible frequency range? Well, Your Honor, as to the facts, I believe that is disputed. And with respect to at least some of the products that were tested, there is less than a two decibel degree difference. The point of the— Your expert didn't say that there's going to be a change of two decibels or a few decibels? He said a few decibels, considering them across the spectrum. As we show in our brief, there is an example of the comparison of the frequency responses where it is less than that. I think I know which figure you're talking about, and that might be true at the two peaks, but it's not true around 12 kilohertz down at the trough. Why is that not significant? There's quite a large gap there. Well, at 12 kilohertz, you're outside of the operative frequency band, which is up to 10 kilohertz. But within the audible range. You are within the audible range, but you are also looking at a preferential response to frequency, which the experts agreed happened at those peaks and what the differences are at those peaks and what addition, if any, the plate provides at those peak levels. Which graph are we talking about? Are we talking about something in your gray brief? I'm sorry. I think it's in both places, maybe at 23 of the blue brief. Is that the one? Yes. Yes. And 11 of your gray brief, same figure. That's right. I guess it was not clear to me that Apple's argument was limited to the two peaks in the, I don't know, less than 10,000 range. Your Honor, across the variability and across the resonance response that was tested, there is clear expert testimony that the differences in frequency response between the duct and separating out the metal plate itself, that those were insignificant differences. There's substantial testimony from SST's experts that did this testing and separated out the resonance response of the metal plate versus the resonance response of the duct as a whole. This Court's cases suggest that allowing variability in claim terms is acceptable when that is true in the context of the invention. The PPG case, the power integrations case, the Acumed case, look at the context of the invention. The context here is sound waves and resonance. When the evidence shows that testing the same speaker 10 times shows a variance in the frequency response, that variability is going to occur. That variability is consistent and in some cases more than the resonance that was tested and shown could be provided by the metal plate. I guess one trouble spot for me on this is that it seemed to me that a lot of the thematic force behind your suggestion that the district court, in modifying the claim construction, adopted a claim construction that cannot be met in the real world, would require no more than some amount of wiggle room, to use a highly non-technical term, but it's not clear to me why that is not fully satisfied by wiggle room that covers, that would exclude in non-resident, sound that the human ear can't hear. So resonance causing a human perceptible sound. If you put that together with what appears to be undisputed facts that a two decibel change can be heard and that there are two decibel changes, why does that not meet the broadest real world driven construction that's available? Whether or not, I'm sorry, whether or not Apple is satisfied with larger variances among its phones. The context of this specification, the context of this invention is an audio speaker. An audio speaker is going to produce sound in the audible sound range. It's going to have an acoustic sound range. So when this specification recognizes that in the context of audible signals, acoustic signals, that the sound reflecting material is substantially non-resonant and that it is, there is a spectrum between completely reflecting and completely absorbing and the sound reflecting surface falls closer to one side of that spectrum, but that there is no absolute. Then the judge in construing or reconstruing the non-claim term non-resonant to be absolute in the context of this specification, in the context of this invention where all you care about is what you can hear because it's a speaker, then that is an absolutist construction that's inconsistent with the claim language and it's inconsistent with the specification. Okay. Well, you have, at our behest, more than used your rebuttal time. We will restore it. Thank you. Mr. Fleming. Good morning and may it please the court. Mark Fleming together with Jason Liss on behalf of Apple. I'd like to start by answering Judge Chen's first question, which I think really does, if anything, crystallize the issue here and to summarize the question, if I may, I believe it was, is there any evidence that no matter how you make a surface, there's always going to be resonance at audible frequencies? And counsel very carefully did not say yes because the answer is no. It is very clear from the record that you can make a surface that does not resonate at audible frequencies. Our engineer, Mr. Porter, says on 3179, it would not be a problem to design a plate that put those resonances outside of the audible band. On 3182, he says, I don't think there's any limitation in achieving the resonance being outside the audible band. Our expert, Dr. Kyriakakis, says the same thing on 3155 and 3696. And there is no controverting evidence on the other side, none whatsoever. This is an argument that they attempt to raise for the first time in the reply brief on pages five to seven. But if your honors look at the passages of the record that they actually cite, none of them addresses the supposed inoperability or impossibility of making a sound reflecting surface that resonates outside the audible range, not inside the audible range. That is what the claims cover. That is perfectly operable. It's just not what Apple does. Apple makes a conscious choice to have a thin stainless steel plate that does resonate at audible frequencies in order to make room for a more powerful speaker that will increase loudness. There was a point made briefly in counsel's argument that If the Apple's metal plate was somehow thicker, I don't know, 20 times thicker, what would happen? I don't know whether 20 times is the amount, but I think that is going to be one of the factors that would move the resonances higher. So it would be not, you know, a dog might be able to hear it, but a human being could not. And that would move the resonance outside of the audible range, and that could be something that would be covered by this claim. So if, just so I understand, if the plate is extra thick, extra stiff, then it'll move the resonance frequency out of the audible range? Yes, that's exactly right, Your Honor. And that's what our experts said. That's what Mr. Porter, Apple's engineer, said. And there's nothing on the other side. Dr. Elliott never opined to this because the argument that SST was making, both before the district court and in its blue brief before this court, is that the construction somehow was inoperable because it precluded all resonance, which is a straw man argument. We never argued that. The district court never held that. The construction has to do with whether it resonates inside the audible range. If it does, then it's not covered. If it doesn't, and all resonances are outside the audible range, then it can be covered, which is why the claims are fully operable. There was an assertion that SST somehow opposed the further construction. I just wanted to correct that. On page 42 of the blue brief, SST specifically says, quote, further construction was appropriate. The district court recognized there was a dispute among the parties as to the meaning of the construction. It asked both parties to present proposed further constructions, and the district court acted accordingly. There was nothing improper about that. As to the graph that counsel addressed with your honors, with respect to the delta between the two peaks, I'd point out that this is a brand new argument in the reply brief. It wasn't made to the district court. It certainly was not made in the blue brief. The blue brief was only making this. The graph has always been part of the record. The graph has, your honor. The notion that there is some, that the delta between the two peaks is somehow too small to be heard is something that comes up for the first time in the reply. The attorneys have blown up and annotated the chart on page 11 of the reply in a way that the expert never did. The argument that that could not be heard is both waived and is unsupported. So you're saying all these red dotted lines is brand new? Correct, yes. Yes, it says annotations added just below it, I believe. And this is not an argument that was ever presented to the district judge and wasn't in the opening brief to this court. Well, their argument always was that what you see in this graph is evidence that the change is so de minimis that it's non-resonant. No, I think the argument, no, the argument was always, there was never this distinction among the different types of iPhones. Dr. Elliott simply said as a cross ball of them, there is a resonance of a few decibels. He tried to downplay the importance of that, didn't deny that they were there, and that's what allowed the district court to find on page 12 of the opinion that the metal plate in the accused product resonates such that the audio output is affected and that that was undisputed. It's only now in the reply that they say, oh, wait a minute, this graph shows that at least in one of these examples, maybe you can't hear it. That is not an argument ever made to the district court and there's no expert testimony supporting it. Notably, had they made this argument in the district court or even in the opening brief, we would have pointed out that at higher frequencies, the human ear can hear differences of 0.25 decibels. That's from the very same master handbook of acoustics that the parties have been talking about. It's not in the record because they never made this argument until the reply briefing in this court, which is why those kinds of arguments are typically not counted. And when you say higher frequencies, you're talking about numbers like what these two peaks are on that newly annotated graph? I mean, we are now well into the realm of attorney argument, Your Honor. There's no expert testimony on this. You're right about that. I'm just curious. Yes, no, I think that is right. That when you get to the higher edge of the range the human ear can hear, which is up towards, I mean, I think the limit depending on age is something like 16 or 17 kilohertz. It's coming up to that range. Unless the court has any further questions, we respectfully submit the judgment in this case should be affirmed. Thank you. Thank you, Your Honor. Apple's expert recognized when talking in the tutorial, telling the district court judge what the patents were about, that in the context of this invention, a perfect reflector or a perfect resonator is quite unattainable. That's at Appendix 1109, paragraph 67. Apple's expert recognized in the context of the invention that the specific materials in the patent are understood to be sound reflecting in the art. It's Appendix 1095 at paragraph 35. Apple's expert also said, the patents recognize the practical realities of materials, consistently distinguishing sound damping materials from sound reflecting surfaces and provide examples of materials that exhibit properties associated with damping and conversely properties associated with reflecting. The construction, the original construction by the court recognized those differences and the construction should recognize the practical realities of materials that a perfect reflector or a perfect resonator is quite unattainable in the context of this invention. Do you agree that it's possible to make a material thick enough so that it becomes stiff enough so that the resonance frequency is above and beyond audible frequencies? That's consistent with additional testimony from Apple's witness, Scott Porter, who counsel referred to. I thought your expert also had the formula that shows that. I want to follow on what Mr. Porter said. He testified that moving the resonance outside the audible range would be catastrophic to the speaker performance. So at least Apple, in considering this resonance issue, said it would be impossible. It would be impossible to do it. So resonance as a practical reality of materials in the context of this invention is something that is expected and understood. Where is that Porter testimony you were just... That is at... With the word catastrophic or some equivalent. It is catastrophic, Your Honor. It's at Appendix 3182. Lines 5 through 14. Okay, thank you. Thank you. So while the witness does testify you can achieve that band, he also says it would be catastrophic. You cannot do it in the context of what is disclosed and claimed in this patent. Do you have a response to the argument that you didn't separately argue about the different Apple-accused products until the reply brief? If I understand the question, Your Honor, with respect to pointing out the two-decibel difference and not making that argument until our reply brief, the reason that is is because Apple, in its brief, cited non-record evidence at page 16, footnote 3, where Apple said in order to be audible there needed to be two decibels of sound. And we responded to the argument Apple made in its brief by pointing out that in the comparison that we show in our brief that there is less than two decibels of difference. So to the extent that the judge's construction on audible means audible to the human ear, there is evidence showing that at least some of the products have less of a frequency difference than that. I guess the district court summary judgment order on the final page said there's no dispute among the parties that the amount of change of decibel level due to the Apple plate is something that's audibly detectable. The district court said that, right? The district court did say that. Yes, the district court did. And we responded to Apple's argument made for the first time in appeal in its brief that there needs to be a two decibel difference in order for something to be audible to the human ear. So we responded to that here by pointing out that that is not so. There are no further questions. Thank you, Your Honor. Thank you.